## KELLNER v. RANDLE et al.†

(Court of Civil Appeals of Texas. Galveston. Feb. 18, 1914. Rehearing Denied April 9, 1914.)

1. MORTGAGES (§ 38*)—DEED OR MORTGAGE—EVIDENCE.

Where the parties to an instrument purporting to be a deed agree that the land was grantor's homestead, and that the transaction was really intended as a mortgage, evidence that others understood that the instrument was intended as an absolute conveyance will not overcome the admission of the grantee that it was intended as a mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 108–111; Dec. Dig. § 38.*]

2. EVIDENCE (§ 263*)—ADMISSIONS—EFFECT.

An admission by a party in an ex parte deposition is not as binding as an admission against interest in a pleading, but may be explained away as by showing that the witness was insane when his answers were taken, without raising the issue of insanity by any pleading, or first moving to suppress the deposition or requesting the appointment of a guardian ad litem for such party, or notifying the other party that the issue of insanity would be raised.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1022–1027; Dec. Dig. § 263.*]

3. MORTGAGES (§ 39*)—DEED OR MORTGAGE—EVIDENCE.

In an action to set aside an instrument in the form of an absolute deed on the ground that it was intended as a mortgage, evidence *held* to make it a jury question as to whether the instrument was merely intended as a mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 112, 113; Dec. Dig. § 39.*]

4. MORTGAGES (§ 37*)—PLEADING.

While insanity must be raised by a proper pleading if relied on to avoid liability or defeat the action, it may be shown in an action to set aside an absolute deed, on the ground that it was intended as a mortgage, that de-

fendant, when he made depositions stating that the instrument was intended as a mortgage, was mentally incompetent, though mental incapacity be not pleaded.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 97–107; Dec. Dig. § 37.*]

Appeal from District Court, Waller County; S. J. Styles, Judge.

Action by Isabella Randle and others against J. G. Kellner. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

J. D. Harvey and Keet McDade, both of Hempstead, for appellant. J. E. Edmundson, C. G. Krueger, and Duncan & Duncan, all of Bellville, for appellees.

McMEANS, J. On December 24, 1912, appellees filed this suit against appellant, seeking to set aside and annul a certain instrument in the form of an absolute deed, executed December 12, 1907, by Isabella Randle and Ben Randle, deceased, who, on the date last stated and prior and subsequent thereto were husband and wife. The grounds set out in appellees' petition upon which said deed is sought to be annulled are: (1) That said deed, although in form an absolute deed, is in truth a mortgage; (2) that the property therein affected was, at the time of the execution thereof, a part of the grantors' rural homestead; (3) that the acknowledgment thereto by Isabella Randle, the wife, was taken in the presence of her husband; (4) that the notary who took the acknowledgment of the grantors to said deed was not at the time a legally qualified notary public of Waller county, in which county the acknowledgments were taken, because not a resident of such county; and (5) that said notary was acting in such transaction as agent for both grantor and grantees. After all the evidence had been introduced the court peremptorily instructed the jury to return a verdict for the appellees, and, this having been done, judgment was accordingly entered for them, annulling the deed. From this judgment J. G. Kellner, the defendant, has appealed, and assigns as error the action of the court in instructing a verdict against him.

By his first proposition under this assignment appellant contends that a deed, absolute upon its face, duly acknowledged, is presumed to be what it purports to be; that when such an instrument is assailed as being a mortgage, the circumstances creating such presumption, together with other supporting testimony in the case, must be weighed by the jury, along with the opposing testimony, to determine the true nature and effect of the instrument, and that the court had no authority to prevent the jury by peremptory instruction, from exercising such function and duty.

The evidence in the record justifies the following findings of fact:

Ben Randle, now deceased, and Isabella Randle were husband and wife on and prior to the date of the execution of the deed in question, and then and for a long time prior thereto resided upon, used, and occupied as their homestead 62 acres of land, owned by them, composed of two adjoining tracts of 31 acres each. Prior to the execution of said deed Ben Randle was indebted to various parties in sums aggregating $808.45, besides owing the appellant, who was then a merchant, a store account amounting to approximately $121. His creditors were pressing him for payment of their respective debts, and some of them were threatening him with criminal prosecution for mortgaging the same stock to two different banks. Being thus pressed he endeavored to borrow money from different persons, and offered as security a mortgage upon a portion of his homestead. These parties refused to loan the money on such security, but offered to buy the property, but he and his wife refused to sell. One party offered them $35 per acre for the 31 acres but they declined his offer, another offered $40 per acre, and this offer was likewise declined, and on the day they executed the instrument sought to be canceled, another offer to buy the land at the price of $40 per acre was also declined. Ben Randle then applied to appellant, and this resulted in the execution of deed in controversy. This deed is in form a general warranty deed, duly acknowledged, and purports to convey the fee-simple title, to 31 acres of the land to appellant for the sum of $930, which is $30 per acre. Ben Randle died before the suit was filed. On the trial Isabella Randle testified positively that she and her husband borrowed the $930 from appellant, and it was agreed that the 31 acres should be security therefor, and that it should be reconveyed by appellant to them whenever they paid the sum so borrowed, with interest. In this she was corroborated by the direct evidence of other witnesses, and by other facts and circumstances. When the suit was filed ex parte interrogatories were propounded to appellant, and in answer to some of them he answered: "Certainly it is a fact that this plaintiff and her deceased husband requested from me a loan of $930, giving as security therefor 31 acres of the 62 acres of land hereinbefore mentioned. Yes, if they paid it back at the agreed time, it is a fact that I agreed to give this plaintiff and her deceased husband $930 in consideration of the fact that they would make me a deed to the said 31 acres of land, such deed being understood and agreed to be conditioned that if said $930 should be paid back by this plaintiff and her deceased husband, with interest, that I, J. G. Kellner, would reconvey this plaintiff and her deceased husband the 31 acres of land thus endeavored to be conveyed to me by them. It is a fact that such deed was to operate and hold said land as security for

the said $930, with interest, and that upon the payment thereof I would reconvey the land, the said 31 acres, to this plaintiff and her deceased husband, if they come in the right time. It is a fact that said deed, as aforesaid, was merely to incumber the property and hold the same as security, and all parties to said instrument understood that such was the purpose and effect of said instrument, but they would not come up and pay, and now it is too late."

On the other hand Max Kellner, a son of the appellant, and who was a subscribing witness to the deed, testified that he was present when Ben and Isabella approached appellant to borrow $930 on the security of the 31 acres; that appellant demurred on the ground that the land offered was Ben's homestead, and said he would have to consult Mr. P. M. Cuny about the matter; that Mr. Cuny was sent for, and upon his arrival advised all the parties that no mortgage could be taken on the property because of its being a homestead, whereupon Randle offered to sell the land outright and appellant agreed to buy at $30 per acre; that thereupon Mr. Cuny prepared the deed and took Ben and Isabella's acknowledgment thereto, the latter acknowledging it separate and apart from her husband, the notary having first explained to Isabella that the conveyance was an outright sale of the 31 acres to appellant; and that she did not then intimate that she or any of the parties understood or had agreed that such was executed as a deed of trust or as security, or that such land was to be conveyed by appellant upon repayment to him of the consideration with interest. P. M. Cuny corroborated the testimony of Max Kellner, but added that he, of course, did not know what agreement was made between the parties before he was sent for. There was testimony to the effect that at the time of the execution and delivery of the instrument in question Ben Randle turned over to appellant all the title papers in his possession relating to the 31 acres conveyed, and that thereafter he and Isabella remained upon and cultivated the land and paid rents therefor to appellant for some two years, when Ben died, and after his death Isabella and her children continued to live on the land and pay rent to appellant for a year or two, and until they were ejected therefrom by appellant; that after Ben's death Jay Gould Randle, a son of Ben and Isabella, and one of the appellees, applied to appellant for material to be used in repairing fences, and it was furnished, but no charge therefor was made against appellees, the appellant treating the land as his own.

Several witnesses testified that after the execution of the deed, and at the time of and before the taking of appellant's ex parte depositions, appellant's mind had become greatly impaired. On this subject the witness P. L. Clapp testified: "I have known Mr. Kellner even since he came to the county; I have known him 20 years or more, and I am intimately acquainted with him, and see him frequently and talk with him. As to his mental condition and what it was in December of last year, I will say that I do not think he was entirely in his right mind, though he was not flighty at all, but he was very forgetful. In his conversations he would talk first on one subject and then jump off on something else entirely different, and his memory was very bad; he cannot remember anything. In his general talk—talking for any extended length of time—he talks at random and does not talk like a sound mind at all; he does not talk like an entirely sane man. From my knowledge of Mr. Kellner and the condition of his memory and recollection, in my judgment, he could not, last December, detail and tell about some transaction that occurred some four or five years before that; I don't know, but I don't think he could. My best judgment is that I don't think he could. My idea about it is that if he undertook to tell what occurred there, it would just as likely be wrong as right. That is my judgment about it; that it is just as likely to be the opposite of the truth as the right. * * * If a direct question was asked him, if a certain statement was made, or a certain agreement was made, some four or five years before, in my judgment, he could not answer correctly, and I would not think his answer could be relied upon as being correct. [S. F. p. 38]. * * * In my judgment, if he was asked a question that could be answered 'Yes' or 'No,' and he answered it, you could not depend on it that his answer was correct, it would just as liable be wrong as right, you could not depend upon it being right except from outside evidence. That is my judgment from my knowledge of his mental capacity."

The testimony of P. M. Cuny, W. G. Clemons, and Henry Wilpitz was substantially to the same effect; appellant was present at the trial, but did not testify.

[1] In a case like the present, where a grantor in a deed which conveys a portion of a homestead claims by her pleadings and testimony that the amount recited as a consideration was merely a loan, and that the deed, although purporting to be an absolute conveyance, was intended by the parties as security for the debt only, and a grantee, whose mental condition is normal, admits in his testimoy that the facts alleged and testified to by the grantor, in that regard, are true, the court should instruct a verdict for the grantor, notwithstanding other persons, not having any interest in the subject-matter of the suit, might testify that they understood, or that it was a fact, that the parties intended that the deed should have the effect purported by its terms, and that a fee-simple title was intended by both parties to be conveyed. Certainly no one better knowns the very terms of the agreement upon which the conveyance was executed than

the parties who make the agreement; and, when they are in accord, and both agree that the land was the homestead of the grantor, and that the transaction, while purporting on its face to be a purchase and sale for a consideration agreed upon and paid, was only a loan of money and a conveyance of the homestead for its security, he ought not to be heard to claim that as other parties did not so understand the agreement, and had testified that the instrument was intended to evidence an absolute sale and conveyance, their understanding should prevail against his own testimony as to the facts, and that therefore he should have judgment against his own admissions.

But what we have said has reference to a grantee whose mental condition is normal. The transaction about which appellant was called to testify occurred on December 12, 1907. His depositions were taken on December 28, 1912, a little more than five years later. As shown by the testimony of the witness Clapp, above set out, appellant's mind had become seriously impaired, and was so impaired at the time the deposition was taken, according to the opinion of this witness, appellant at the time of answering the interrogatories could not intelligently relate a transaction that occurred four or five years before; "it would just as likely be wrong as right." In the judgment of this witness, if a direct question was asked appellant, whether a certain statement or agreement was made four or five years before, he could not answer correctly, and, the witness thinks, his answer could not be relied upon as being correct; that his answer could not be depended upon as being correct except from outside evidence. Cuny testified: "From my knowledge of the man [appellant] and his mental condition, in my judgment I do not think he could tell the transaction and what occurred at the time of the execution of a deed even 30 days before that." Clemons testified: "If he [appellant] was asked a direct question that could be answered 'Yes' or 'No,' or any other way, and he should answer that question, you could not depend on it as being correct, I don't think, that is, if the question was about something that occurred two or three years before the question was asked, I don't think you could depend on it being correct if he attempted to answer it. * * * No, sir; you could not depend on it if he made the answer." Henry Wilpitz testified: "* * * His mind is weak now, and has been in that condition for about three years. * * * In my judgment, from my knowledge of Mr. Kellner, if he undertook to tell about a transaction that occurred three or four years ago, what was said and done then, you could not rely on his answer as correct."

[2, 3] If appellant in his testimony had denied that the transaction between himself and Ben and Isabella Randle was a loan of money and the deed was taken as security,

certainly an issue would have been raised that would have required the court to submit the case to the jury; or if he had not testified at all, we are sure that the testimony of P. M. Cuny and Max Kellner on that issue, together with the circumstances introduced in evidence tending to show recognition by Ben and Isabella of appellant's title to the land, would have been sufficient to raise the issue and require its submission to the jury. The admission made by appellant in the ex parte depositions do not stand on the same footing as the solemn admission against interest made in pleadings, but may be explained. Smith v. Olson, 92 Tex. 181, 46 S. W. 631; Goodbar Shoe Co. v. Sims, 43 S. W. 1066. The explanation might be such as was allowed to be made in the cases cited, or the explanation might be that the witness at the time of giving his testimony was mentally incapable of giving correct answers, or that at least his answers "would just as likely be wrong as right." This testimony having been admitted in explanation of the answers made by the appellant, we think the case should have gone to the jury, and that the court erred in withdrawing the case from them, and for this error the judgment must be reversed.

On the other grounds alleged for annulling the deed the evidence was conflicting. The testimony was not such as to compel a finding that Ben Randle was present when his wife's acknowledgment to the deed was taken, nor that the notary was not a legally qualified notary of the county in which the acknowledgment was taken because of being a nonresident of that county, nor that he was acting in such transaction as agent of both parties in a sense that disqualified him to so act and therefore those grounds could not properly be the basis of the instructed verdict.

Appellees have presented a cross-assignment of error, under which they present the proposition that it was error for the court to permit the defendant, over the objection of the plaintiffs, to introduce evidence tending to show the defendant's unsoundness of mind at the time when his ex parte depositions were taken without having filed any pleadings raising the issue of insanity or unsoundness of mind, or without having first filed a motion to suppress such ex parte depositions, but permitting the same to be introduced without objection, and without having requested the court to appoint a guardian ad litem to represent defendant's interest, or without giving notice to the plaintiffs that such issue would be raised upon the trial.

[4] No authorities are cited by appellees in support of this contention. We are of the opinion that the testimony, the introduction of which is complained of, was admissible as against the objections offered. In Smith v. Olson, supra, our Supreme Court held in effect that the provisions of the statute authorizing the taking of the ex parte

depositions of a party to a suit do not give any extraordinary effect to the deposition when answered, and that to make his answers conclusive against him and to deny him the right to explain them might be to make the procedure a means of injustice, which would probably in the long run counteract the benefits which might be expected to follow from it. It cannot be gainsaid that where the mental condition of a party is relied upon to avoid liability or to defeat the suit, the issue must be raised by proper pleading; but no such issue was sought to be injected here, but the question here presented is one purely of evidence, which does not go to the foundation of the action or defense, but relates only to the weight and credibility of the evidence relied upon by the plaintiffs. Wren v. Howland, 33 Tex. Civ. App. 87, 75 S. W. 900; 40 Cyc. 2573. The assignment is overruled.

For the error indicated, the judgment of the court below is reversed, and the cause remanded.