**DAVIS et al. v. HUDSON.   (No. 8085.)**

(Court of Civil Appeals of Texas.   Galveston. Nov. 22, 1921.   Rehearing Denied Dec. 15, 1921.)

1. **Deeds** ☞211(3)—Evidence held to prove that grantor signed and acknowledged instrument as a deed.

In action involving validity of deed, which grantor, who could not read, claimed to have signed on the representation that it was a mortgage, evidence *held* to sustain finding that grantor signed and acknowledged the instrument as a deed.

2. **Limitation of actions** ☞96(2)—Runs from time when error was or should have been discovered.

The period of limitations within which a suit for reformation of deeds must be commenced commences to run from the date the error was, or should reasonably have been, discovered.

3. **Limitation of actions** ☞197(2)—Evidence held to support finding that errors in descriptions were not discoverable until within four years prior to suit for reformation.

In action involving question of whether reformation of deeds was barred by the four-year statute of limitations, evidence *held* to sustain finding that errors in descriptions of deeds were not discovered, or could not reasonably have been discovered, until within the four-year period prior to the commencement of the action.

4. **Trial** ☞260(1)—Refusal of requested instructions covered by main charge not error.

Refusing to give requested instructions fully covered by the main charge *held* not error.

5. **Appeal and error** ☞736—Multifarious assignment not considered.

An assignment which is multifarious, in that it complains of two distinct matters, should not be considered.

6. **Appeal and error** ☞742(1)—Assignment not followed by sufficient statement not considered.

An assignment, not followed by a sufficient statement, should not be considered.

7. **Witnesses** ☞361(1)—Witness whose testimony had been disputed can be shown to have borne a reputation for truth.

Where testimony of witness was attacked, testimony tending to show that he bore the reputation of being a truthful negro *held* admissible.

8. **Appeal and error** ☞882(7)—Plaintiffs cannot complain of defendant's evidence on issue raised by plaintiffs' own evidence.

Plaintiffs, having themselves introduced evidence on the question of whether one of the plaintiffs was "sassy" to white people, cannot complain of defendant's evidence tending to show that such plaintiff was "sassy" to white people.

9. **Appeal and error** ☞1050(1)—Testimony that one of plaintiffs was "sassy" to white people held harmless.

In action involving title to land, testimony that one of the plaintiffs was "sassy" to white people *held* harmless on appeal by plaintiffs, since jury could not have been influenced thereby.

10. **Acknowledgment** ☞61—Testimony that deceased notary was a truthful, careful man held admissible in aid of certificate.

Where grantor denied truth of facts stated in certificate of acknowledgment appended to deed, and where the notary was dead at the

time of the trial, involving an issue as to the truth thereof, testimony that the notary was a good, truthful man, and one who was careful in his official work, *held* admissible.

Appeal from District Court, Anderson County; John G. Prince, Judge.

Suit by Dora Davis and another against H. L. Hudson, in which defendant filed a cross-action. From the judgment rendered, plaintiffs appeal. Affirmed.

W. R. Petty, of Palestine, for appellants.
Seagler & Pickett, of Palestine, for appellee.

LANE, J. This is a suit brought by Dora Davis and her husband, William Davis, who is generally known and called Bill Davis, against H. L. Hudson, to recover title and possession of a certain 150 acres of land described in the plaintiffs' petition; the original petition being filed in 1919.

The petition was in the usual form of petitions in suits of trespass to try title, and, among other things, it was alleged that, on or about the 1st day of March, 1918, the plaintiff Dora Davis was the owner of a certain tract of land containing about 150 acres, a part of the Manuel Rionda Eleven League grant in Anderson county, Tex., same being known as lot 8 of said survey (further describing same by metes and bounds); that she and her husband, Bill Davis, resided on said land, and the same constituted their homestead, and that on said date the defendant Hudson by force of arms, etc., dispossessed them and took possession of said land, and was forcibly and unlawfully withholding such possession from plaintiffs. Plaintiffs further alleged that Hudson was claiming some interest in a part of said tract of land through and under a deed dated November 29, 1912, purporting to have been executed and acknowledged by Bill and Dora Davis to one J. A. Woolverton. They alleged that the signature of Dora Davis to said deed was procured by fraud and by fraudulent representations, leading her to believe the instrument signed by her was a mortgage to secure a debt of her husband, Bill Davis; that she is an ignorant negro woman; that she could neither read nor write; that the notary whose certificate is attached to the instrument did not, as stated in such certificate of knowledgment, explain said instrument to her in any manner whatsoever, or indicate to her that it was a deed; that she was told by the notary public to sign the instrument, and she would be then told what it was; that after her signature was obtained to said instrument and she was told that it was a deed conveying her land to J. W. Woolverton, she at once objected to the same, and refused to acknowledge it, or to have anything further to do with the deed or its execution; that the certificate of the notary public appended to said deed, which states that she acknowledged such instrument as required by law, and that she acknowledged such instrument to be her act and deed, and that she did not wish to retract it, is false and untrue, and does not speak the truth, and made for the purpose of and in furtherance of a purpose of cheating and defrauding her out of her land, all of which facts were known to and acquiesced in by J. A. Woolverton at and before the making of said certificate, and that the defendant knew all of such facts at and before he purchased or took title to said land from J. A. Woolverton. The petition was sworn to by both plaintiffs.

The defendant, Hudson, answered by pleas of general denial and not guilty, and by specially disclaiming any interest in the land sued for, except so much thereof as is embraced in the boundaries of the following field notes:

"All that certain tract or parcel of land situated on the M. Rionda Eleven League grant, situated in Anderson county, Texas, and described as follows: Beginning at a point on the northwest line of the F. Bettic league 723 vrs. N. 45 E. from the west corner of same, being the south corner of the land claimed by H. L. Hudson. Thence N. 55 W. 720 vrs. to corner near spring R. O. brs. N. 10 E. 3 varas. Thence N. 45 E. 458 vrs. corner from which a R. O. brs. N. 30 W. 2 varas. Thence south 45 E. 700 varas corner on N. line of Bettic league from which a B. J. brs. S. 10 W. 1 vara. Thence S. 45 W. 300 vrs. with Bettic line to the place of beginning, containing 47.28 acres of land."

He further alleged that he owns and holds the land last described through and under a deed from J. A. Woolverton to himself of date December 5, 1919. And for further answer, by way of cross-action against the plaintiffs, the defendant, Hudson, alleged: That J. A. Woolverton had, on the 29th day of November, 1912, purchased the 47.28 acres of land last described herein from plaintiffs, but that in their attempt to describe the land actually sold all parties to the contract of sale and purchase, by their mutual mistake, caused and permitted to be inserted in the deed executed by the plaintiffs to J. A. Woolverton, of date November 29, 1921, the following field notes:

"Beginning at a stake in the N. B. line of the M. Rionda survey from which a P. O. 6 in. in dia. mkd. X brs. S. 20 E. dist. 4 varas. Thence N. 55 W. 700 vrs. a stake near spring from which a R. O. 20 in. in dia. mkd. X brs. N. 17 W. dist. 4 vrs. another 18 in. in dia. mkd. X brs. N. 15 E. dist. 4½ vrs. Thence N. 45 E. 440 vrs. a stake from which a R. O. 6 in. in dia. mkd. X brs. N. 30 W. dist. 2 vrs. Thence S. 45 E. 680 vrs. a stake from which a B. J. 10 in. in dia. brs. S. 74 E. dist. 1 vr. Thence S. 45 E. 300 vrs. to place of beginning to contain 45 acres of land of the M. Rionda Eleven League grant."

That it was the intention of all the parties to said deed that the land described herein as being actually sold should be accurately described in said deed, and that the same should be delivered to J. A. Woolverton under such deed, and that in fact it was so delivered by the plaintiff. That on the 5th day of December, 1916, he (defendant) purchased from J. A. Woolverton the land actually purchased and delivered to the said Woolverton by plaintiffs, and that he was placed in actual possession thereof by Woolverton, but that in attempting to convey said land to him J. A. Woolverton by mistake copied into his deed the field notes, found in the deed from plaintiffs to Woolverton which misdescribed the land so sold. That defendant, without any lack of diligence on his part, failed to discover, and did not discover, the defect in the description of said land as set out in the two deeds mentioned until on the 10th day of May, 1920.

The prayer was for judgment reforming and correcting the description and field notes of the land claimed by defendant as they appear in the two deeds mentioned so as to properly and accurately describe the land actually sold and delivered, as aforesaid, and for title to said land. By supplemental petition the plaintiffs pleaded the four-year statute of limitation in bar of the defendant's suit to have the deed mentioned reformed.

The cause was tried before a jury, who were instructed by the court that the land in controversy was, prior to the execution of the instrument by plaintiffs to J. A. Woolverton, the separate property of Dora Davis, and was a part of the homestead of herself and her husband, Bill Davis; that there had been offered in evidence a deed from plaintiffs to J. A. Woolverton, which had a notary's certificate purporting to show that Dora Davis had acknowledged said deed in the manner and form as required by law; that the question for their determination was, Did the notary public explain to Dora Davis such deed, and did she in fact acknowledge the execution of such deed before said notary? that unless Dora Davis knew that the instrument was such deed when she signed it, and unless she thereafter acknowledged the same, it would be void as to her.

The court also instructed the jury that the burden to show that Dora Davis did not sign and acknowledge the deed of November 29, 1912, before the notary public for the purpose of conveying the land in question was upon Dora Davis; but if they should find that Dora Davis did not in fact sign the deed knowing it to be a deed for the purpose of conveying the land to J. A. Woolverton, and did not with such knowledge thereafter acknowledge the same, as required by law, they should find for the plaintiffs. If they found the contrary to be the fact, that their verdict should be for the defendant Hudson.

Under the instruction so given the jury returned a general verdict for the defendant, Hudson.

Upon the disclaimer pleaded by the defendant, and upon the verdict of the jury and the evidence, the court rendered judgment as follows: (1) that the plaintiffs recover of and from the defendant, Hudson, so much of the land described in the plaintiffs' petition as disclaimed by defendant in his answer; (2) that the defendant H. L. Hudson recover of and from the plaintiffs, Dora Davis and William Davis, the 47.28 acres of land sued for by him in his cross-action; and (3) that as it appeared from the undisputed evidence that defendant is entitled to have the two deeds, one from the plaintiffs to J. A. Woolverton, dated the 29th day of November, 1912, and the other from J. A. Woolverton to H. L. Hudson, reformed so as to describe the 47.28 acres of land sued for in defendant's cross-bill as prayed for by defendant, judgment was accordingly so rendered reforming said deeds as prayed for. From the judgment so rendered Dora and William Davis have appealed.

[1] The effect of the sixth and seventh assignments in the record (first and second in the brief), is that the court erred in not rendering judgment for the plaintiffs, because the undisputed evidence shows that the plaintiff Dora Davis did not acknowledge the deed purporting to be executed by her and her husband, Bill Davis, and delivered by them to J. A. Woolverton, and therefore, as the land involved was the separate property of Dora Davis and her homestead, the purported deed signed by her and her husband was void, and conveyed nothing to J. A. Woolverton.

We cannot agree with appellants' contention that the undisputed evidence shows that Dora Davis did not, in manner and form as required by law, acknowledge the deed mentioned. That the land sold by Dora and Bill Davis to J. A. Woolverton was the separate property and the homestead of Dora Davis at the time of the execution and delivery to J. A. Woolverton of the deed of date November 29, 1912, is unquestioned, but we think there was ample evidence to support a finding by the jury that Dora Davis did in fact sign, and in manner and form as required by law, acknowledge the execution of the same.

The undisputed evidence shows that Dora and Bill Davis appeared before W. E. Montgomery, a notary public for Anderson county, on the 29th day of November, 1912, for the purpose of making some kind of conveyance to J. A. Woolverton, and that they did sign the deed of that date, afterwards delivered to J. A. Woolverton, and that Bill Davis acknowledged the execution of the deed. The certificate of the notary appended to the deed recites that both of said parties appeared be-

fore him, and that both acknowledged that they had signed the instrument for the purposes and consideration therein expressed, and that after he, the notary, had examined Dora Davis privily and apart from her husband, and had fully explained the instrument to her, she, Dora Davis, acknowledged such instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it. It was shown that W. E. Montgomery, who certified to the acknowledgment, was dead at the time of the trial of this case.

The witness William Jemmerson testified that he met Dora Davis and Bill Davis in a buggy or wagon about the time of the execution of the deed by them to Woolverton, and that Bill told him, in the presence and hearing of Dora, that they were going to sell Mr. Woolverton some land.

Bill Davis testified as follows:

"I brought my wife to Tennessee Colony on the day that this deed was executed for the purpose of deeding to Mr. Woolverton that 45 acre tract of land as described. And I thought all the time that I could sell the land myself. I brought my wife along because Mr. Woolverton told me to bring her along to sign. I didn't know until he told me that she would have to sign too. I brought her along, and we went before the notary public and signed that deed. She signed the deed. I don't know nothing about her acknowledging the deed; they had me step aside, on the gallery. I don't know whether they took my wife's separate acknowledgment in there or not. I don't know whether Mr. Montgomery was performing his duty in there or not. Mr. Woolverton didn't know nothing about me not telling my wife about my business, and Mr. Montgomery didn't know it either. I didn't tell him nothing. I walked in and signed the deed."

J. A. Woolverton testified that when Bill Davis agreed to sell him the land he told him he (Davis) would have to have his wife to sign the deed, as the land was homestead property.

Dora Davis testified that she never gave Mr. Woolverton a deed to the land; that she signed a deed to Woolverton through a mistake; that she did not know that it was a deed when she signed it; that she could not read nor write, and that no one told her that it was a deed before she signed it; that Bill Davis went in and signed the deed, and then said to her, "Come in and sign;" that she went in, and then said to Mr. Montgomery, the notary, "If I sign this paper, it will be the first paper I ever signed;" that after she had signed the paper Mr. Montgomery read it to her, and she said to him, "'Well, Mr. Walter, I will see them when they get my land,' there was not another word said between us." Testifying further, she said:

"I didn't sell this land to Mr. Woolverton. I thought when I signed the deed it was a mortgage. Didn't nobody tell me it was a mortgage. I thought it was a mortgage because he did business with Mr. Woolverton. All I know is I signed a paper by mistake."

Testifying further, she said that after the notary had read the deed to her she knew it was a deed, but that she had already signed it, and that the notary would not give it back to her; that the notary never asked her a word about wishing to retract her act in signing the deed.

The witnesses Clay Cotton, E. L. Linder, and J. A. Woolverton testified in effect that W. E. Montgomery, who certified that Dora Davis had acknowledged the deed, was a justice of the peace and ex officio notary public, and had the reputation of being a truthful man and a good officer, and one that was careful in his official work.

By the ninth assignment appellants, in effect, insist that the court erred in rendering judgment reforming the two deeds, one from plaintiffs to Woolverton, and the other from Woolverton to defendant Hudson, because the evidence shows that the right of the defendant to have such deed reformed was barred by the four-year statute of limitation pleaded by appellants.

[2, 3] We are not prepared to hold that the evidence demanded a finding that appellee's suit for reformation of the two deeds was barred by the four-year statute of limitation. Limitation begins to run in such cases as this from the date the error was, or should have reasonably been, discovered. Isaacks v. Wright, 50 Tex. Civ. App. 312, 110 S. W. 970; Durham v. Luce, 140 S. W. 850. It is shown that when J. A. Woolverton proposed to purchase the land from Bill Davis a surveyor was employed to survey the same, that the land to be surveyed was pointed out by Bill Davis and that the surveyor did actually survey the land pointed out by Bill Davis and now claimed by appellee, but that in making his field notes to be inserted in the deed the surveyor inadvertently recited that he began on the north line of the Rionda Eleven League survey, when in fact his beginning point was on the north line of F. Bettic survey. Such fact is clearly shown by the map on the sixth page of appellants' brief. These field notes were handed to the scrivener who prepared the deed, and he, supposing that they properly described the land actually sold, inserted them into the deed from plaintiffs to Woolverton, and, without having their attention called to the error in the description mentioned, the deed was executed by the vendors and delivered to the vendee Woolverton without being corrected. Woolverton made the same mistake in describing the land in his deed to appellee, Hudson.

The matter of misdescription having never been theretofore raised, and there being nothing to arouse the slightest suspicion that the land sold was not accurately described in

the deeds, neither Woolverton nor appellee, Hudson, had any knowledge thereof until the 10th day of May, 1920, only a few days prior to filing the cross-bill of appellee asking for the correction of the description of the land as found in the deeds mentioned.

We do not think it can be said that the failure of Woolverton or appellee to sooner discover the defective description in said deeds was chargeable to the negligence of either of said parties. Nor do we think there was any evidence showing that either of these parties acted in this matter differently from what any person of ordinary prudence and care would have acted under like or similar circumstances.

[4] The court did not err in refusing to give to the jury the instructions asked in the special requested charge set out in the eighth assignment, as the substance of such charge was fully given in the main charge.

[5–9] The third assignment (seventh in appellants' brief) is multifarious, in that it complains of two distinct matters: (1) That the court erred in admitting evidence of the good character of the witness William Jemmerson; and (2) that the court erred in permitting certain witnesses to testify that the plaintiff Bill Davis was "sassy" to white people, and for that reason the assignment should not be considered, as well as for the further reason that it is not followed by any sufficient statement. However, after examining the statement of facts, we have reached the conclusion that as the testimony of the witness Jemmerson was attacked, it was not error to admit testimony tending to show that he bore the reputation of being a truthful negro. We also conclude that appellants, by evidence introduced by them, put in question as to whether Bill Davis was "sassy" to white people, and therefore they are not in a position to have the judgment reversed on the ground that the court permitted appellee to accept the challenge and to show that Bill was "sassy." In any event we cannot believe that any jury composed of men of ordinary intelligence would have been in the least influenced to render a verdict against the plaintiffs by reason of the admission of the testimony that Bill was "sassy," and therefore for that, if for no other reason, we would refuse to reverse the judgment because of the admission of the testimony complained of.

[10] Since the appellants had, by the testimony of Dora Davis, attacked the truth of the facts stated in the certificate of acknowledgment appended to the deed from Dora Davis and Bill Davis to J. A. Woolverton, and it being shown that the notary was dead, it was admissible for appellee to introduce testimony to show that the notary who made the certificate was a good, truthful man, and one who was careful in his official work. We therefore overrule the contention of appellants that such testimony was erroneously admitted.

We have been unable to discover any reason for the reversal of the judgment of the trial court, and it therefore becomes our duty to affirm the same, and it is accordingly so done.

Affirmed.