FLYNN et ux. v. CITIZENS' NAT. BANK OF WACO.

No. 914.

Court of Civil Appeals of Texas. Waco.

Sept. 18, 1930.

Rehearing Denied Oct. 16, 1930.

W. L. Eason, of Waco, for plaintiff in error.

Trippet, Richey & Sheehy, of Waco, for defendant in error.

STANFORD, J.

This suit was filed by H. H. Flynn and wife, May Flynn, plaintiffs in error, who will hereafter be referred to as plaintiffs, against the Citizens' National Bank of Waco, defend-

ant in error, which will be referred to as defendant, to recover a house and lot in Waco, Tex. Said house and lot had been conveyed by plaintiffs to defendant by what appeared upon its face to be a regular warranty deed, for the stated consideration of $4,500. Plaintiffs contended said instrument was intended as a mortgage or deed of trust to secure a debt due by plaintiffs to defendant, and that, as said property was the homestead of plaintiffs, said instrument was null and void. Defendant contended said instrument was intended as a warranty deed, and intended to convey and did convey, for the consideration of $4,500, the fee-simple title to said property to defendant. The pleadings will not be set out, but will say they are sufficient to raise all issues made by the evidence.

The case was submitted to a jury upon two special issues, and in response thereto the jury found:

"(1) At the time the deed in question was executed it was not intended between Mr. Schuler, acting for the bank, and Mr. and Mrs. Flynn, that said deed should operate as a mortgage.

"(2) At the time Mr. and Mrs. Flynn executed the deed in question, said transaction at said time was an absolute sale."

On these findings the court entered judgment for defendant, the bank. Plaintiffs, Flynn and wife, have appealed and present the record for review.

Under a number of propositions, plaintiffs contend the findings of the jury are contrary to the uncontradicted evidence. Under other propositions, plaintiffs contend the findings of the jury are contrary to the overwhelming preponderance of the evidence. We will discuss these two propositions together. The decisive question here involved is the intention of the parties in the execution and delivery of the deed in question. The jury found such intention was to convey absolute title. Is there any substantial evidence to support such finding? If so, then plaintiffs' contention must be overruled. The record shows that plaintiff H. H. Flynn was engaged in buying cotton, and that the defendant bank carried said cotton account for the said Flynn, that on July 7, 1926, the cotton account of the said H. H. Flynn with the bank was approximately $30,000, and that the bank had something like 300 bales of cotton as security for the cotton loan, which was evidenced by warehouse receipts. The record shows further that H. H. Flynn had a personal checking account with the bank on July 7, 1926, as did his wife also. Each of them had separate checking accounts, one in Flynn's name and the other in the name of Mrs. Flynn, and both of these accounts on July 7, 1926, were overdrawn in the aggregate of about $1,000. The record shows further without contradiction that on July 7,

1926, the defendant bank had just about enough cotton on hand to take care of Flynn's debit balance of his cotton account if the cotton was sold on the then current prices of cotton, so Mr. Flynn was notified by the defendant bank that, if the cotton was to be carried longer, additional margins would have to be furnished. There was some discussion between Mr. Flynn and Mr. Schuler, representing the bank, as to what additional property Mr. Flynn could furnish as a margin to justify the bank in longer holding said cotton. Mr. Schuler testified, in substance, that at that time he did not know that the property Mr. Flynn was proposing to put up as additional margin was his homestead, and as soon as he so learned, he told Mr. Flynn that he could not take a mortgage on his home, and, if said property was used as additional margin, he would have to sell it, and put up the proceeds as additional margin, that the bank could not take a mortgage on his home; that a few days afterward Mr. Flynn told him that he could not find a purchaser, and asked him if the bank would be interested in buying the property; that he (Schuler) then told him (Flynn) that it would at what the property was worth; that he was friendly with Mr. Flynn and wanted to help him; that he told Mr. Flynn that any price within reason that he would put on the house the bank would give him for it, and went so far as to send Mr. Humphries to appraise it; that Mr. Flynn said he thought the house was worth $5,000 to $6,500; that he sent Mr. Humphries out there, and they agreed on a price of $4,500 several days before the deed was executed; that Mr. Flynn brought the abstract and his deeds, and he (Mr. Schuler) took it up with Judge Kelly, probably the day before the deed was executed, and had him draw up the deed and had Mr. and Mrs. Flynn come down the next morning and execute the deed; that Mr. Schuler explained to Mr. Flynn that they would have to agree on a rental for the property as Flynn wanted to stay there for a short time, and that they did agree on a rental of $40 per month.

The evidence is ample to show that the deed was duly signed and properly acknowledged by both Mr. and Mrs. Flynn, and duly delivered to the bank, and by it accepted and placed of record, and the $4,500, the agreed consideration for the premises, was deposited to the account of H. H. Flynn in a special margin account, and checked out as follows: $1,066.79, which was the amount necessary to cover the overdraft of Flynn and his wife; $200, which was the amount of the check which Flynn gave his wife and upon which he received the money; and $3,233.21, which was the amount credited on the cotton note after the sale of the cotton on March 7, 1927. The cotton note, signed by Flynn and Smith, by H. H. Flynn, payable to the Citizens' National Bank, for $30,763.90, was shown. The

record shows further that said cotton account was closed out on March 7, 1927, at which time $3,233.21, which was the balance of the money to the credit of Flynn in the bank from the purchase money of the property, was credited on said cotton note, and after such credit the bank charged off as its loss on the transaction the sum of $3,000. The witness Schuler also testified that none of the cotton of Mr. Flynn was sold without consulting him about it, and that Flynn approved of all the sales. The record shows further that since the sale of the house and lot in question by Flynn and wife to the bank on July 7, 1926, and since that time the bank has paid all of the taxes on same, and one year's delinquent taxes previous to the time the bank took title to it; also that the bank has paid the insurance premiums on the property since the bank purchased it. The deed from Flynn and wife to the bank was by the bank promptly placed of record. The witness Schuler further testified that there was never anything said to him by Mr. Flynn or Mrs. Flynn about taking the deed as security for a loan by the bank to Flynn, that no such agreement was made or ever at any time discussed, but that the conveyance of said property from Flynn and wife to the bank at the time it was made was intended by all parties to said transaction to be an absolute sale and to convey to the bank a fee-simple title. The record shows that Mr. Schuler had been cashier of the bank for a number of years, and he testified that he was familiar with our homestead law, and knew that a mortgage or deed of trust on a homestead was null and void and afforded no security. He testified further, in effect, that, as soon as he learned that the property in question was homestead, he informed Flynn and wife that the bank could not use it as additional margin, and that if the bank carried the cotton longer, they would have to sell the property and put up the money as additional margin. The evidence is sufficient to show the property was sold, and the proceeds of said sale, not the property, was put up as additional margin, and the bank continued to carry the cotton about a year longer before same was closed out. As we view the transaction, the bank did not own the cotton, but only held same as security for its debt, and, after the sale of the house and lot and the deposit of the proceeds of said sale with the bank as additional margin, the bank did not own said proceeds, and so had no right to have same credited on its note, and never acquired such right until it foreclosed its lien, and ascertained the amount of its security that was necessary to satisfy its debt, and could then apply only such amount to its debt, and the remainder, if there had been any, of the proceeds of the sale of the cotton and the money put up as additional margin, the bank would have been obligated to pay over to appellants, but there was no remainder; both of said funds having been insufficient to satisfy the bank's demands. The deed from Flynn and wife to the bank is in every respect regular, and purports to convey the property in fee simple to the bank. The $4,500 consideration, it appears, was paid by the bank.

 There are other circumstances tending to show that said deed was intended to convey to the bank fee-simple title. The intention of the parties in the execution and delivery of said deed was a question of fact for the jury. Hiner et ux. v. Meyer (Tex. Civ. App.) 25 S.W.(2d) 196; Cochrane v. Wilson, 106 Tex. 180, 160 S. W. 593; Kellner v. Randle (Tex. Civ. App.) 165 S. W. 509; Alexander v. Conley (Tex. Civ. App.) 187 S. W. 254. The jury found that the parties to said instrument did not intend same to be a mortgage to secure a debt, but did intend it to be an absolute sale of the property to the bank, and, there being evidence to sustain such finding, same must be accepted as conclusive upon this court. Lasater v. Lopez, 110 Tex. 179, 217 S. W. 373; Bowman v. Saigling, 102 Tex. 485, 119 S. W. 295; Texas Jurisprudence, vol. 3, § 767; Davis et al. v. Hudson (Tex. Civ. App.) 235 S. W. 1109. We overrule these propositions.

 Under other propositions, plaintiffs contend the court erred in admitting in evidence the ledger sheet of the defendant bank, showing the special margin account of H. H. Flynn, because same was self-serving declarations of defendant, was hearsay, was secondary evidence, was made after the transaction in question had been consummated, etc. The record shows that plaintiffs, with respect to the $4,500 which defendant alleged was the money paid to plaintiffs for the deed to their home, pleaded as follows: "That said deed recites a consideration of $4,500.00, but said recitation is wholly false and untrue and no consideration whatever was paid by defendant to plaintiffs for said conveyance, but it was executed solely and only for the purpose of securing plaintiffs' indebtedness to defendant."

Mr. Flynn testified as follows: "The $4,-500.00 was not deposited to my checking account in the bank; I don't know what account Mr. Schuler put it into. I never did check against that account."

After plaintiffs had pleaded that they did not receive any part of the $4,500 alleged to have been paid to them for their home and that the consideration recited in the deed was wholly false, and Flynn had testified that such was a fact, then the special account of Flynn, as shown by a ledger sheet of defendant, was offered in evidence by the defendant, and, after the witness Schuler testified that he was familiar with the books of the bank and supervised the keeping of same and knew of his own knowledge that the entries in the special margin account were correct, and after Flynn on cross-examination had admitted the bank may have transferred some of this

money to pay his overdraft, and the check for $200, and that it was on the $4,500 deposit that came out of the sale of the house, the court admitted said ledger sheet in evidence. This account, as shown by the ledger sheets, shows the disposition of the $4,500. It showed that $1,066.79 of said $4,500 was used to pay the overdraft of Flynn and wife to the bank for said amount, that $200 of said $4,500 was checked out by Flynn and his wife, and that the balance of $3,233.21 was later applied toward the payment of the cotton note on March 7, 1927. The witness Schuler testified that Flynn directed and authorized him to apply the $4,500, exclusive of the $200, for the purpose and as shown by the ledger sheet of which complaint is made. The trial court qualified plaintiffs' bill of exception, raising the question here involved, as follows: "With the qualification that the witness Schuler testified that the bookkeeping was done under his supervision and that of his own knowledge he knew what such entries were, the above and foregoing bill of exception has been examined by me and found to be correct."

We think the trial court was correct in admitting in evidence said ledger sheets, which showed the disposition of said $4,500 for which the property was sold to the bank. Heid Bros. v. Commercial Nat. Bank (Tex. Com. App.) 240 S. W. 908, 909, 24 A. L. R. 904; Missouri K. & T. Ry. Co. v. Patterson (Tex. Civ. App.) 164 S. W. 442; Cushing v. Riddel (Tex. Civ. App.) 255 S. W. 479. The above assignments are overruled.

We have considered all of plaintiffs' assignments, and, finding no reversible error, affirm the judgment of the trial court.